HEARD APRIL TERM, 1877.

## Ware *vs.* Miller.

A motion to dismiss an appeal, on the ground of irregularity in taking the appeal, will not be allowed where it does not appear that the party making the motion has complied with the rules of Court prescribing the practice in such cases.

No action lies upon a bail bond taken by the Sheriff in March, 1867, where the liability of the bail was not fixed, in the manner prescribed by the law then existing, before imprisonment for debt was abolished.

A State may constitutionally abolish imprisonment for debt as to existing contracts, for, though by so doing it impairs the remedy of the creditor, it does not "impair the obligation of the contract" in the constitutional sense of the term.

BEFORE NORTHROP, J., AT SPARTANBURG, JULY TERM, 1876.

This was an action by James H. Ware against W. T. Miller. The case is as follows:

On the 11th March, 1867, the plaintiff commenced an action of *assumpsit* against H. N. Maddox. The writ was endorsed with an order for bail.

On November 12th, 1867, the Sheriff of the County (Spartanburg) arrested Maddox, who, on the next day, gave a bail bond to the Sheriff, with W. T. Miller, the defendant, as bail. The bond was conditioned in the usual form to appear at the next Court, &c.,

"to answer to James W. Ware, the plaintiff, of a plea of trespass on the case, and so forth, and, also, for certain promises and assumptions by the said defendant to the said plaintiff made,"·&c.

The plaintiff recovered judgment in his action against Maddox on the 9th May, 1870, and on the same day sued out an execution thereon against him, which, on the 18th June, 1870, was returned *nulla bona.*

On 7th November, 1871, the bond was assigned by the Sheriff to Ware, the plaintiff, who, on the same day, commenced this action thereon against Maddox and Miller.

The complainant in this action, after stating the facts hereinbefore set forth in reference to the first action, alleged "that said Maddox failed to appear and abide by said judgment," (that is the judgment in the first action,) "but removed himself and property beyond the limits of the State, and that neither he nor Miller has paid the said judgment, which is still due and unsatisfied."

The defendant, Miller, in his answer, submitted to the Court as his defense to the action, that, on account of the military orders of the General commanding in this State at the time, and the provisions of the State Constitution of 1868, prohibiting imprisonment for debt, Maddox could not at any time have been surrendered; and that at no time after the giving of the bond had any process been issued by the Court for the arrest of Maddox, and the defendant therefore submitted that the plaintiff had no right of action against him.

The defendant, by his attorneys, requested His Honor the presiding Judge to instruct the jury as follows:

1. That bail were entitled until return day of *ca. sa.* against the principal in which to surrender their principal.

2. That there must be a *ca. sa.* issued before the liability of bail can be fixed.

3. That in order to fix such liability there must be a return of *non est inventus* to the *ca. sa.*

4. That bail had the right for one term after such return in which to produce the principal.

5. That, imprisonment for debt having been abolished, the defendant was relieved from any liability not already incurred on said bond.

6. That, no *ca. sa.* having been issued, the jury should find for the defendant.

7. That the plaintiff had no cause of action.

The request was denied, and the jury were instructed to find for the plaintiff, which they accordingly did,—the verdict being for $369.

The defendant appealed on the ground that His Honor the presiding Judge erred in refusing to instruct the jury as requested.

*Evins & Bomar*, for appellant, cited the authorities mentioned in the opinion of the Court, and other authorities, and contended that the Circuit Judge erred in denying the instructions asked for by the defendant; that the liability of the bail had never been fixed, and, therefore, the plaintiff could not maintain his action.

*J. C. Winsmith*, contra, read a certificate of the Clerk of the Circuit Court, and his own affidavit, which stated that the verdict in the Circuit Court was rendered August 1st, 1876; that judgment was entered on the 9th of August, 1876; execution thereon was lodged with the Sheriff 30th of August, 1876; that the notice of appeal was served 30th of September, 1876, and that the bond for appeal was filed October 11th, 1876; and he thereupon submitted that, under Rule LV of the Circuit Court, and the Revised Statutes, page 675, Section 420, the appeal was irregular and should be dismissed. He cited Hill on New Trials, 702; 4 Waite's Pr., 220, 221. He contended that by the removal of Maddox from the State, and the failure of Miller to pay the judgment, the bond was forfeited; and he further contended that the bail bond could not be affected by any regulation made after it was given.— *Cosgrove* vs. *Butler*, 1 S. C., 241; *Crotwell* vs. *Boozer*, 3 S. C., 600.

July 24, 1877.  The opinion of the Court was delivered by

McIver, A. J.  Before proceeding to a consideration of the merits of this case, it will be necessary to dispose of an objection, made in a very informal and irregular way, to the hearing of this appeal. This objection, based upon purely technical grounds, not having been made in the manner prescribed by the rules of this Court, cannot be considered; for by the amended rules of this Court, in force from and after the 1st day of October, 1873, when a party desires to move this Court that an appeal be dismissed, or the cause stricken from the docket, for any irregularity in taking the appeal, it must be upon eight days' notice, upon affidavits, copies of which should be served on the opposite party. In the

papers submitted to us we find no evidence that this requirement has been complied with, and, as we think that parties who assail others upon purely technical grounds should be careful to see that their mode of attack is itself technically accurate, we are not disposed to enter upon a discussion of the merits of the objection.

Turning, then, to a consideration of the case, we find that the plaintiff issued a bail writ *in assumpsit* against the defendant, H. N. Maddox, on the 12th March, 1867, who, having been arrested, on the next day executed a bail bond, in the usual form, with the defendant, W. T. Miller, as his bail, to the Sheriff of Spartanburg. On the 9th May, 1870, the plaintiff recovered judgment in his original action, and issued his execution to enforce the same, which, on the 18th June, 1870, was returned *nulla bona.* On the 7th November, 1871, the plaintiff having on that day procured an assignment of the bail bond from the successor in office of the Sheriff who had taken the bond, commenced this action, alleging the foregoing facts and the further facts "that said Maddox failed to appear and abide by said judgment, but removed himself and property beyond the limits of the State, and that neither he nor Miller had paid the judgment, which was still due and unsatisfied."

The defense set up by Miller, no answer having been put in by Maddox, was "that on account of the military orders of the General commanding in this State, and the provisions of the State Constitution prohibiting imprisonment for debt, the body of said Maddox could not at any time have been surrendered, and, further, that at no time after the giving of said bond had any process been issued by the Court for the arrest of said Maddox, and said defendant, therefore, claimed that the plaintiff had no right of action." The plaintiff offered in evidence the bail bond and the Sheriff's return of *nulla bona* on his execution against Maddox, while the defendant put in evidence the military orders prohibiting imprisonment for debt. The defendant submitted sundry requests to charge, which it is not necessary to particularize, as they all amounted to a request to charge that, under the case as made, the defendant, Miller, could not be held liable. These requests the Circuit Judge refused, and, on the contrary, instructed the jury to find for the plaintiff, which they accordingly did.

The defendant having excepted to the refusal of his requests, we are now to consider whether such exceptions were well taken. The plaintiff certainly cannot maintain this action unless he has shown

a breach of the condition of the bond, which is the foundation of it. What, then, is really the condition of this bond? It is not merely, as its terms imply, that "the above bound H. N. Maddox, defendant, do appear at the next Court, &c., * * to answer to . James H. Ware, the plaintiff, of a plea of trespass on the case, &c.," for, as the law then stood, he might have so appeared and answered, and yet might have afterwards committed a breach of the bond. Nor does the condition require that he should *answer* to the demand of the plaintiff, in the sense of satisfying any judgment that might be obtained against him, for this would be converting the bail into a surety for the debt. The condition of this bond amounted simply to this: that he would have his body within reach of any process which the Court might lawfully issue against it for the enforcement of such judgment as might be rendered against him. It would, therefore, seem to follow, necessarily, that, if from any cause, whether from want of power in the Court or from want of will in the plaintiff or in the Court, such process has never been issued, there could be no breach of the condition of the bond, and, therefore, no cause of action. Because for anything that the Court can possibly know, it may be that if such process had been issued the party bound would either have voluntarily surrendered himself, in exoneration of his bail, or the bail might, by exercising the right formerly secured to him, have brought his principal within reach of such process.

An examination of the authorities will show that they fully sustain the foregoing views. In *Ancrum* vs. *Sloan* (1 Rich., 421,) the question was whether the liability of the bail had been fixed; in other words, whether there had been such a breach of the condition. of the bond as would enable the plaintiff to maintain the action against the bail. A *ca. sa.* was issued against the principal on the 21st June, and on the 8th July the Sheriff made an entry on it of *non est inventus*, and on the 4th of October, the day before the regular return day of the *ca. sa.*, the plaintiff commenced his action on the bail bond against the bail. A motion was then made to confirm the surrender of his principal by the bail, which had been made some time before,—exactly when is not stated, but certainly after the commencement of the action against the bail,—and the motion was granted.

Butler, J., in delivering the opinion of the Court, after deciding that a return of *non est inventus* cannot be made on a *ca. sa.* so as to fix the liability of the bail before the regular return day of such *ca. sa.*, (the return of *non est inventus* in this case having been made prior to such return day,) uses this language: "No action can be commenced against the bail until they are fixed by a *ca. sa.* and *non est* returned upon it against the principal." And, again, he says: "For the purpose of fixing the bail, it is indispensable that a *ca. sa.* should be sued out."

In *Stevens* vs. *Meeds* (1 McC., 318,) there had been a return of *nulla bona*, but no *ca. sa.*, against the principal, and it was held that the bail was not fixed by the return of *nulla bonà*. In *Arthur* vs. *Antonio* (1 McC., 251,) the action was against the Sheriff for refusing to assign a bail bond, and the Court held that the action could not be maintained, because, the principal having died before the issuing of a *ca. sa.* against him, the bail could not be made liable, and, therefore, the plaintiff sustained no damage from the refusal of the Sheriff to assign the bail bond. In *Saunders* vs. *Hughes*, (2 Bail., 513,) O'Neill, J., in considering the meaning and effect of the words "to abide the event of the Court and jury," which had been improperly incorporated into the condition of the bail bond, which was the subject matter of the action in that case, says: "If they have any meaning, they cannot mean anything more than that the defendant (Colonel Hughes) will legally abide the judgment of the Court—that is, that he shall remain within the reach of its process of satisfaction. This is exactly the obligation which the bail incurred by undertaking for his appearance."

In *Saunders* vs. *Bobo*, (2 Bail, 492,) the question was what effect the discharge of the principal under the Insolvent Debtors Act, at the suit of another plaintiff, before the bail had been fixed by the return of *non est inventus* on a *ca. sa.* against the principal, would have upon the liability of the bail, and the Court, through Johnson, J., uses this language: "Unless the bail has become fixed, it must, for very obvious reasons, operate to discharge them. Until then they owed no debt, for the judgment is exclusively the debt of the principal. After they are fixed it becomes their own proper debt and the discharge of their principal cannot discharge them. * * * It follows, therefore, that bail are fixed by the return of *non est inventus* to a *ca. sa.* against their principal and not before." Apply this doctrine to the case now in hand. The principal having been

discharged from liability to arrest under a *ca. sa.* by the provisions of the Constitution of the State, and the obligation of the bail being, as we have seen, merely that his principal shall hold himself answerable to such process, would not the discharge of the principal from his liability to arrest operate as a discharge of the bail from his obligation, when such discharge of the principal has taken place, as in this case, before the liability of the bail became fixed?

In *Watson* vs. *Bancroft*, (4 Strob., 218,) Evans, J., says: "The bail stipulated for nothing else but that the principal shall be put back in the possession of the Sheriff, 'out of whose custody he has been taken.' At the time this bail bond was executed such a stipulation was lawful. The bail had a right to capture his principal wherever he could find him and deliver him into the custody of the Sheriff, who was bound to receive and safely keep him until discharged by due course of law. But before any liability was or could have been fixed upon the bail, by the issue of a *ca. sa.*, this right was not only taken away from him, but it became absolutely unlawful for him to perform his stipulation, and hence he is relieved of his obligation. For if one agrees to do a thing which, at the time of such agreement, is lawful, and it afterwards is made unlawful by an Act of the Legislature, passed before the time arrives at which such thing is to be done, the Act avoids the promise and the party is relieved from his obligation."—2 Pars. on Con., 674; see also 1 Sel. Pr., 173–4.

The views hereinbefore presented are not in any respect weakened by the cases of *Longstreet* vs. *Lafitte*, 2 Sp., 667; *Jarvis* vs. *Gibberson*, Dud., 223; following *Despany* vs. *Davis*, 3 McC., 16, and *Jarvis* vs. *Alexander*, Chev., 143; for, in fact, the case of *Longstreet* vs. *Lafitte* rather recognizes the correctness of our position than otherwise, while the other cases are confined to the consideration of the effect of the Act of 1824, exempting females from arrest under a *ca. sa.*, upon the right to hold a female to bail, and the obligations which such bail would assume. And it is quite manifest that the respondent's citations from the General Statutes do not support his position; for Section 10, at page 751, relates exclusively to fines and forfeitures, and whether a fine or a forfeiture is to be regarded as a debt, within the meaning of that term as used in the clause of the Constitution which abolishes imprisonment for debt, we deem it unnecessary now to consider; for, if so regarded, then that Section is in conflict with the Constitution,

and, therefore, invalid. If not so regarded, then that Section has no application to the question under consideration.

The other reference to page 716, Section 4, which must be a misprint, possibly intended for some one or more of the Sections in Title VI, Chapter CXXIII, of the General Statutes, is equally inapplicable, as the provisions of that Chapter must be regarded as confined to those cases in which imprisonment for debt is not abolished by the Constitution, to wit, "in cases of fraud," or to cases arising under Section 10, page 751, above referred to. If it was the intention of the respondent, when he used the language "this bail bond could not be affected by any regulation made after it was given," to contend that, imprisonment for debt having been abolished after the execution of this bond, such legislation was retroactive and impaired the obligation of the contract, the language of Cooley, in his work on Constitutional Limitations, at page 287, furnishes a complete and conclusive answer. He says: "Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct. To take a strong instance: Although the law at the time the contract is made permits the creditor to take the body of his debtor in execution, there can be no doubt of the right to abolish all laws for this purpose, leaving the creditor to his remedy against property alone." This proposition finds support in numerous cases cited.

We think, therefore, that the exceptions were well taken, and the motion is granted.

*Willard*, C. J., concurred.